UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA

v.

SAMUEL WHITESIDE,
a/k/a "Sammy"
a/k/a "Aura"

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-1-14

13 Cr. 576 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Samuel Whiteside is charged in a two-count superseding indictment with traveling in interstate commerce with the intent to commit a crime of violence, namely the murder of Anthony Martino, to further an unlawful activity, namely prostitution, in violation of 18 U.S.C. 1952(a)(2) and (a)(3)(B); and with causing other individuals to travel in interstate commerce to engage in prostitution in violation of 18 U.S.C. 2422(a).

On November 29, 2013, Defendant moved to (1) suppress the warrantless search of a Mercedes automobile and digital camera found in the car; (2) suppress an out-of-court identification; and (3) compel further discovery.[1] The Court DENIES Defendant's motion to suppress the search of the Mercedes, without prejudice to its renewal; asks for further briefing regarding the digital camera; and DENIES Defendant's remaining motions.

## BACKGROUND

On June 4, 2012, Defendant had a series of phone conversations with the victim, Anthony Martino. Defendant and Martino were allegedly disputing the sale of a prostitute by Defendant to Martino for $1,500 to $2,000. Compl. ¶ 3. Martino allegedly challenged Defendant to travel from

---

[1] New counsel for Defendant was appointed on January 8, 2014 who renewed these motions in the Reply Memorandum in Response to the Government's Opposition, dated September 15, 2014.

1

Massachusetts to Room 18 of the Metro Motel in the Bronx, and settle the dispute in person. Later that night, Defendant allegedly travelled to the motel, confronted Martino in person, and fatally stabbed him.

On August 23, 2012, Witness 1, who knew Defendant, correctly identified Defendant in a photo array ("Array 1"). Gov't Opp'n 4. Witness 3, who was allegedly with Martino in Room 18, was also shown Array 1, but was unable to identify Defendant. *Id.* Several months later, Witness 3 was shown a different array ("Array 2"), but was still unable to identify Defendant. *Id.* On January 24, 2013, Witness 2 was shown Array 2 and identified Defendant as the individual he saw leaving Room 18 covered in blood on the night of the stabbing. *Id.*

On December 4, 2012, police in Thomasville, North Carolina, attempted to pull over Defendant while he was driving a Mercedes, which had Illinois license plates. Downs Decl. ¶ 2. Instead of pulling over, Defendant sped away, leading police to issue a "be on the look-out" alert for the Mercedes. *Id.* Later that day, police located the Mercedes in a business park. *Id.* As Defendant was leaving a nearby diner with three women, two of the women went to retrieve the Mercedes and bring it to him. Whiteside Aff. ¶¶ 3-4. When the women arrived at the Mercedes, the police detained them and began searching the car without a warrant. Carvlin Decl. ¶¶ 21-22. Police then located Defendant in a nearby shoe store, arrested him for eluding arrest and for traffic violations, and transported him, and the woman he was with, back to the Mercedes in handcuffs. Whiteside Aff. ¶¶ 6-9. The warrantless search of the Mercedes uncovered drug paraphernalia, a knife, a handgun holster, and a digital camera. Carvlin Decl. ¶ 22. Subsequently, police brought the digital camera back to the station, removed its memory card, and accessed its files on their computer. *Id.* at ¶23. The memory card contained numerous sexually explicit photos and several photos of Defendant with a gun. *Id.* at ¶ 24.

## DISCUSSION

I.  **Defendant's Motion To Suppress Evidence Discovered from the Warrantless Search of the Mercedes and Digital Camera**

   A.  **The Warrantless Search of the Mercedes**

Defendant seeks to suppress evidence recovered from the warrantless search of the Mercedes in violation of the Fourth Amendment.

Prior to the Court's consideration of Defendant's Fourth Amendment argument, Defendant must demonstrate a legitimate expectation of privacy in the Mercedes. *Rakas v. Illinois*, 439 U.S. 128 (1978) (ruling that a defendant has "standing" to bring a Fourth Amendment claim only when he has a legitimate expectation of privacy in the area that was searched). Defendant claims to own the Mercedes and argues that his Fourth Amendment rights stem from his ownership. Whiteside Aff. ¶¶ 3, 11.

The Government has produced the vehicle's registration in Illinois which shows "Terrell Owens" of Rockford, Illinois as the Mercedes's owner. Downs Decl. ¶ 3. Since Defendant has not produced any documentary proof of ownership or leasing, nor has he asserted any other type of lawful possession or license or permission to use, the Court must deny the application to suppress, without prejudice to its renewal, if accompanied by proof or evidence of some indicia of lawful possession. *See U.S. v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) (denying a suppression motion because the defendant "demonstrated neither ownership of the [car], nor license from the owner to possess the [car]"). Defendant's failure to do so will result in the denial of his motion to suppress the evidence obtained from the search of the Mercedes: the drug paraphernalia, the knife, and the handgun holster.[2]

---

[2] Thus, the Court does not reach the merits of Defendant's Fourth Amendment claim with respect to the discovery of these items.

3

### B. The Warrantless Search of the Digital Camera

The search of the Mercedes also uncovered a digital camera. Officers accessed the contents of the digital camera at the station by removing its internal memory card, plugging the memory card into their computer, and uploading its contents to their screens. Carvlin Decl. ¶ 23. Since Defendant is the undisputed owner of the digital camera, he has a Fourth Amendment interest in its contents. Whiteside Aff. ¶ 11. Defendant claims that the search of the camera violated his Fourth Amendment rights and that the files contained on the camera's memory card should be suppressed.

Defendant relies on the holding in *Riley v. California*, 134 S. Ct. 2473 (June 25, 2014) (a warrant is required before searching a "smart phone" seized incident to arrest). Although *Riley* deals with searching the content of smart phones, its rationale appears to be equally applicable to searching the content of digital cameras given their storage capacity and labelling (time/date/location) capabilities. Indeed, the evidence suppressed in *Riley* came from the smart phone's camera and photo storage feature. *Id.* at 2481 ("Although there was 'a lot of stuff' on the phone, particular files that 'caught [the detective's] eye' included videos of young men sparring while someone yelled encouragement using the moniker 'Blood.' The police also found photographs of Riley standing in front of a car they suspected had been involved in a shooting a few weeks earlier.") (citations omitted). *Riley* focused on a smart phone's ability to take and store vast numbers of photos. *Id.* at 2489 ("The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet."). Since a warrant is required before searching "thousands of photos in a digital gallery" on a smart phone, *id.* at

4

2493, it may well be that a warrant is required before searching a digital camera.[3]

The Government's initial argument, that a warrant was not required to search a digital camera incident to a lawful arrest, was made in December 2013, six months before the Supreme Court's June 25, 2014 decision in *Riley*; and the Government's sur-reply, dated September 22, 2014, does not address this issue. The Government has 10 days to brief the issue of whether the product of the warrantless search of the digital camera must be suppressed under the Supreme Court's ruling in *Riley*.

## II.  Defendant's Motion to Suppress his out-of-court Identifications and Request for Additional Discovery

Next, Defendant moves to suppress Witness 2's out-of-court identification.[4] Alternatively, Defendant requests additional discovery relating to Witness 2's identification. Defendant objects to the "minimal information" supplied about the circumstances of the identification and challenges the generic format of Array 2. Def. Reply Mem. 4.

Contrary to Defendant's claims, the two agents who showed Array 2 to Witness 2 provided sworn statements describing the identification process. Compl. ¶ 5; Donato II Decl. ¶¶ 2-6. Moreover, the Court rejects Defendant's claim that the identification process was unnecessarily suggestive simply because Array 2 was printed on plain paper. *See U.S. v. Bautista*, 23 F.3d 726, 729 (2d Cir. 1994) ("We will exclude a pre-trial identification only if the procedure that produced the identification is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'") (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)). Any issues regarding the identification

---

[3] The Government concedes that "a digital camera, like a cellphone, is no more than a type of locked container in the form of an electronic device that can store images and information." Gov't Opp'n 19.

[4] There is no dispute as to Witness 1 and 3. Witness 1 will identify Defendant, not based on a photo array, but rather on their prior relationship. Witness 3 will also testify at trial, but will not identify Defendant based on a photo array. *Id.* 4-5.

5

process should, therefore, be resolved by cross-examining the two agents at trial. *See Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (holding that the standard required to suppress an identification is a "very substantial likelihood of irreparable misidentification" and "[s]hort of that point, such evidence is for the jury to weigh").

Accordingly, the Court DENIES both Defendant's motion to suppress and request for additional discovery on Witness 2's identification of Defendant.

### III. Defendant's Motion to Compel Further Discovery

Finally, Defendant moves to compel the discovery of additional materials under Fed. R. Crim. P. 16(a)(1)(F). Specifically, Defendant requests results from tests police conducted on the car Defendant allegedly drove on the night of the stabbing. Def. Reply Mem. 7. The Government has provided Defendant with a laboratory report relating to the search of the car, Gov't Sur-Reply 3-4, and has acknowledged their continuing Rule 16 obligations, Gov't Opp'n 20. Accordingly, Defendant's request is DENIED.

### CONCLUSION

For the reasons discussed, Defendant's motion to suppress the evidence obtained from the Mercedes is DENIED, without prejudice to its renewal upon proof that Defendant has a Fourth Amendment interest in the Mercedes. The Government has 10 days to brief the issue of whether the evidence obtained from the digital camera should be suppressed pursuant to *Riley v. California*. Defendant's remaining motions to suppress and requests for discovery are DENIED.

Dated: New York, New York
       September 30, 2014

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge