UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

SAMUEL WHITESIDE,

  a/k/a "Sammy"
  a/k/a "Aura"

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-29-15

13 Cr. 576 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Defendant Samuel Whiteside is charged with traveling in interstate commerce with the intent to commit a crime of violence (here, the murder of Anthony Martino), to further an unlawful activity (here, prostitution), in violation of 18 U.S.C. § 1952(a)(2) and (a)(3)(B); and with causing others to travel in interstate commerce to engage in prostitution in violation of 18 U.S.C. § 2422(a). On November 29, 2013, Whiteside moved to suppress, among other things, the evidence obtained from the warrantless search of a vehicle he was driving and of a digital camera found within the vehicle. The Court issued an Opinion and Order dated September 30, 2014. Subsequently, new counsel[1] was given leave to make a supplemental submission on two outstanding issues: (1) whether Whiteside had lawful possession of a vehicle so that he has standing to contest its search, and 2) whether the warrantless search of a digital camera requires the suppression of the search results. The motion to suppress the items obtained from the vehicle

---

[1] Whiteside received a second substitution of counsel on January 30, 2015. He is now represented by Anthony Cecutti. He was previously represented by Stephanie M. Carvlin until January 8, 2014, and then by Jill R. Shellow and George R. Goltzer.

1

search is denied except that the motion is granted with respect to the evidence obtained from the warrantless search of the digital camera.

## BACKGROUND[2]

Martino died as a result of stab wounds allegedly inflicted by Whiteside on June 4, 2012. *See* Superseding Indictment ¶ 1. Several months later, on December 4, 2012, police officers in Thomasville, North Carolina observed a white Mercedes-Benz driven by a black male traveling above the speed limit. Spence Aff. ¶ 2. After failing to apprehend the vehicle, officers later located the Mercedes in the parking lot of a medical facility complex. *Id.* ¶ 3. Chief Deputy Shawn Spence arrived at the parking lot and saw two women near the car, along with several police officers. *Id.* ¶ 4. One of the women, "Female-1," informed the officers that the Mercedes belonged to her, and then "provided consent" for the law enforcement officers to search the car. *Id.* ¶ 4. She also provided the officers with the keys to the car. *Id.*

At that point, officers began searching the car and found marijuana, drug paraphernalia, a handgun holster, identification cards, Social Security cards, douche, sanitary wipes, condoms, erotic clothing and lingerie, go-go boots, cellphones, a laptop, an iPad, and a camera. *Id.* ¶ 5. The camera was obtained from a side pocket on the door of the driver's side of the car. Whiteside Aff. ¶ 8; Def. Mem. at 6. Subsequently, other law enforcement officers found Whiteside and a third woman inside a grocery store across the street from the parking lot. Spence Aff. ¶ 6. The manager of the grocery store informed Spence that Whiteside and the woman had walked through the store, asked for phone chargers, and then stood in front of the windows looking outside. *Id.* ¶ 7. The windows had a view of the entrance to the parking lot.

---

[2] The facts of this case are addressed in the Court's September 30, 2014 order and are only recounted here where relevant to the instant motion.

2

Spence then arrested Whiteside for speeding to elude arrest, speeding, and driving with a revoked license. *Id.* ¶ 8. Spence read Whiteside his Miranda warnings, and Whiteside stated that he understood them. *Id.* Whiteside denied driving the Mercedes, and when Spence asked Whiteside about the fake identification cards and Social Security cards in the car, Whiteside stated, "[Y]ou didn't find those in my vehicle." *Id.* When Spence "confronted him on his statement that the Mercedes was his vehicle, Whiteside smiled and denied stating that the Mercedes was his car. At no time did Whiteside claim that anything in the Mercedes belonged to him." *Id.* An officer later removed the SD card from the camera, inserted it into a computer, and viewed the photographs and images contained on the card. Carvlin Decl. ¶ 23. The photographs included images of a sexually graphic nature as well as images of Whiteside holding a Glock handun. *Id.* ¶ 24.

Whiteside seeks to suppress evidence obtained from the warrantless search of the Mercedes and of the digital camera. The Court previously denied Whiteside's motion to suppress an out-of-court identification and to compel further discovery. Dkt. 31. The Court ordered supplemental briefing on the warrantless search of the digital camera, *id.*, and subsequently allowed Whiteside's new counsel to supplement prior defense submissions, *see* Docket Entry dated April 13, 2015. For the following reasons, the motion to suppress is denied with respect to the search of the Mercedes, but granted with respect to the search of the digital camera.

3

## DISCUSSION

### I. Search of the Vehicle

#### A. Whiteside did not abandon the vehicle.

The Government argues that Whiteside lacks standing to object to the search of the vehicle because he abandoned the Mercedes and its contents. This argument fails. The facts presented do not demonstrate that Whiteside purposefully sought to evade the officer's attempts to apprehend him. There are numerous possible reasons why Whiteside parked the car and left it, and the Government's arguments do not foreclose any of these possibilities.

The Government urges the Court to consider as evidence of abandonment the fact that Whiteside disclaimed ownership of the car following his arrest. But Spence's affidavit also states that Whiteside said "you didn't find those [incriminating items] in *my* vehicle," immediately before disclaiming ownership. Spence Aff. ¶ 8 (emphasis added). The details of that conversation are unclear, and are not sufficient to demonstrate that Whiteside denied any ownership of the car. Moreover, the search of the vehicle occurred before Whiteside said that he did not own the Mercedes—that he later may have disclaimed ownership does not demonstrate retroactively that Whiteside abandoned the Mercedes prior to the search.

The Court does not address the issue of standing to object to the search based on ownership or control of the vehicle, because the Government appears to have dropped their argument that Whiteside lacks standing to object because he was not the owner of the car. Gov. Reply at 1-2.

4

**B.     The officers obtained consent to search the vehicle from an individual with apparent authority to consent.**

While the Court determines that Whiteside did not abandon the vehicle, Whiteside's motion to suppress the vehicle search must still be denied. It is clear that the officers obtained a valid consent to search the vehicle. Whiteside argues that the Government fails to provide sufficient information regarding the officers' perceptions of the apparent authority of Female-1, who allegedly gave consent to search. Def. Mem. at 3-5. But Chief Deputy Spence's affidavit provides adequate information to determine the reasonableness of the officers' understanding of the grant of consent. Spence states that "Female-1 stated that the Mercedes belonged to her and provided consent for other law enforcement officers and I to search the Mercedes. Female-1 provided the keys to the Mercedes to allow other law enforcement officers and me to search the Mercedes." Spence Aff. ¶ 4.

Consent to search is validly obtained where a third party has actual or apparent authority to give consent. *See U.S. v. McGee*, 564 F.3d 136, 139 (2d Cir. 2009). In determining whether apparent authority exists, the Court looks at whether "the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990) (internal citations and quotation marks omitted). Under this analysis, even where the individual did not have authority to give consent, the consent is valid if "the person reasonably appeared to the police to possess authority to consent to the search." *McGee*, 564 F.3d at 139.

Here, Female-1 informed officers that they could search the car and provided the officers with the keys to the car. The possession of keys is an appropriate indication of authority over premises. *See U.S. v. Turner*, 23 F. Supp. 3d 290, 305 (S.D.N.Y. 2014) (citing cases). Under the circumstances demonstrated by Spence's affidavit, "a man of reasonable caution" would

5

understand Female-1 to have authority to consent to a search of the vehicle. Accordingly, the motion to suppress the search of the vehicle is denied.

Whiteside's request for an evidentiary hearing to determine whether Female-1 had apparent authority is denied. Whiteside has failed to demonstrate the existence of a factual dispute regarding the officers' understanding of Female-1's grant of consent to search the vehicle. *See U.S. v. Parrilla*, 2014 WL 1621487, at 4 (S.D.N.Y. Apr. 22, 2014).

## II. Search of the Camera

### A. The officers did not have consent to search the camera.

While the search of the vehicle was appropriate since the officers had consent from an individual with apparent authority, the ensuing search of the digital camera's contents was improper.[3]

The consent the officers received to search the car did not extend to the camera's contents. "Consent to search an area is distinguishable from consent to search an object or closed container located within that area." *Turner*, 23 F. Supp. 3d at 310. The Court must consider "the defendant's expectation of privacy in *the object* apart from his expectation of privacy in the [area being searched]." *U.S. v. Haqq*, 278 F.3d 44, 50 (2d Cir. 2002) (emphasis in original). Here, several facts demonstrate why it was not reasonable for officers to assume that Female-1 had authority to consent to a search of the camera. The camera was not in plain sight within the car but was enclosed in a pocket on the driver's side door of the vehicle. The camera was presumably turned off, and therefore needed to be turned on before the stored images could be viewed. *See U.S. v. Griswold*, 2011 WL 7473466, at *5 (W.D.N.Y. June 2, 2011) ("[T]he

---

[3] The Court does not address the Government's previous argument that the search was proper under the automobile exception, because the Government did not renew this argument in its supplemental briefing. If the Court were to consider the argument, it would reject it.

6

type and location of the [searched item] is significant to the consent analysis."). Deputy Chief Spence had seen Whiteside driving the vehicle, and so knew that Female-1 was not the current driver with access to that pocket. Moreover, the officers did not ask Female-1 or anyone else present to whom the camera belonged or if they could search the camera when they located it. These circumstances "cry out for further inquiry." *Turner*, 23 F. Supp. 3d at 312 (internal citation and quotation marks omitted). With the facts as presented, the Court cannot find that it was objectively reasonable for the officers to believe Female-1's consent to search the car extended to an electronic item turned off and tucked out of sight in a side pocket of the driver's door.

Accordingly, the Court rejects the Government's argument, *see* Gov. Mem. at 1-3, that *Riley v. California*, 134 S. Ct. 2473 (2014), does not apply because the search was based on consent.

### B. The search of the digital camera violated Whiteside's Fourth Amendment rights.

The Court now turns to whether search of the camera's contents was proper as a search incident to lawful arrest. Under *Riley*, "the search incident to arrest exception does not extend to a search of data on a lawfully seized cell phone." *U.S. v. Cushnie*, 2014 WL 7447149, at *9 (S.D.N.Y. Dec. 31, 2014). Because the Court finds that Whiteside's digital camera here is protected under *Riley*, the motion to suppress the search of the digital camera is granted.

The evidence in *Riley* consisted primarily of photographs and videos found in the photo album application on Riley's cellphone. 134 S. Ct. at 2480-81. In finding the search of Riley's cell phone improper, the Supreme Court stated that "[t]he sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions" and "the fact that a search in the pre-digital era could have turned up a photograph or two in a

wallet does not justify a search of thousands of photos in a digital gallery." *Id.* at 2489, 2493. The Supreme Court's grant of protection to a device with the capacity to store a vast numbers of images directly applies to the search of Whiteside's digital camera. Here, the digital camera provided officers with much of the same information about Whiteside as that obtained by the officers, and used against the defendant, in *Riley*. *See, e.g.*, *Schlossberg v. Solesbee*, 844 F. Supp. 2d 1165, 1167-71 (D. Or. 2012) (digital camera entitled to protection under the Fourth Amendment).

The Court finds *U.S. v. Miller*, 34 F. Supp. 3d 695 (E.D. Mich. 2014), the case relied upon by the Government in support of the argument that *Riley* cannot be extended to digital cameras, inapplicable. *See* Gov. Reply at 6-7. Contrary to the Government's assessment, the Court's reasoning in *Miller* hinged on the difference between the warranted search there and the warrantless search in *Riley*. *Miller*, 34 F. Supp. 3d at 699-700 ("*Riley* involved a warrantless search incident to arrest, while this case involves a warranted search of a home. A different mode of analysis pertains to each."). Indeed, the *Miller* Court explicitly stated that "Defendant's argument is valid, as far as it goes, in asserting that police would not be entitled to a warrantless search of his personal camera absent some exigent need." *Id.* at 701. The Court simply disagrees with the *Miller* Court's dicta regarding the differing levels of protection owed to cell phones and digital cameras. Likewise, the Court does not rely on *American News & Info. Servs. Inc. v. Gore*, 2014 WL 4681936 (S.D. Cal. Sept. 18, 2014), which only discussed differences between cameras and cell phones in dicta, and whose holding concerned only the qualified immunity to which defendant police officers were entitled for the warrantless search of a digital camera.

In *Riley*, the Supreme Court cautioned that "[t]he fact that technology now allows an individual to carry [vast amounts of] information in his hand does not make the information any less worthy of the protection for which the Founders fought." 134 S. Ct. at 2495. Here, police officers' warrantless search of a digital camera and the ensuing discovery of numerous incriminating digital images elicit these same concerns. Accordingly, the Court finds that Whiteside's digital camera is protected under *Riley*.

## CONCLUSION

For the foregoing reasons, Whiteside's motion to suppress the items found in the search of the Mercedes-Benz on December 4, 2012 in Thomasville, North Carolina is DENIED, except that the motion to suppress is GRANTED with respect to the evidence obtained from the warrantless search of the digital camera.

Dated: New York, New York
       June 29, 2015

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge