UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

             *-against-*

SAMUEL L. WHITESIDE,

             *Defendant.*

------------------------------------------------------------X

13 Cr. 576 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Samuel Whiteside pled guilty to a two-count indictment charging him with (1) traveling interstate with intent to commit a "crime of violence" (the assault and / or murder of Anthony Martino) to further an unlawful activity, namely, prostitution offenses, in violation of 18 U.S.C. § 1952(a)(2); and (2) persuading women to travel interstate for the purpose of engaging in prostitution in violation of 18 U.S.C. § 2422(a). After a *Fatico* hearing, the Court determined that Whiteside had committed the crime of voluntary manslaughter, not murder in the first or second degree. The PSR calculated an offense level of 27 and criminal history category of II for a guidelines range of 78 to 97 months. On December 8, 2016, the Court sentenced him to 115 months' imprisonment. Whiteside did not file a notice of appeal. He now moves to reinstate his right to appeal, principally on the ground that his attorneys rendered ineffective assistance of counsel by failing to file a notice of appeal despite his explicit instruction.

To prevail on a claim of ineffective assistance of counsel, "a defendant must demonstrate both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (quoting *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). The failure of an attorney to file a notice of appeal after being instructed to do so by a client is "professionally unreasonable" and is presumed to be prejudicial "when counsel's failure] deprives a defendant of an appeal that he otherwise would have taken." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 484 (2000). Here, the question of whether Whiteside instructed his attorneys to file a notice of appeal was sharply disputed. The Court appointed Whiteside new counsel and held an evidentiary hearing on January 16 and 18, 2018. *See Campusano v. United States*, 442 F.3d 770, 777 (2d Cir. 2006) ("[O]n remand, the district court is directed to conduct an evidentiary hearing to determine whether Campusano in fact instructed his attorney to file an appeal. If Campusano did give such an instruction, he is to be allowed a direct appeal.").

At the evidentiary hearing, Whiteside conceded that his attorneys, Anthony Cecutti and Ying Stafford, discouraged him from appealing because of their concern that he could receive even more time in prison. Tr. 8:10. Nevertheless, he testified that he instructed Cecutti "in no uncertain terms" that he wanted him to file a notice of appeal, and he listed five grounds for appeal that he wanted to raise: (1) the upward variance, (2) misrepresentation of e-mails he authored, (3) receiving only a two point reduction for acceptance of responsibility, (4) his brother not being allowed to speak at sentencing and the Court not taking his background into consideration, and (5) the Court and Government making adverse comments about him. Tr. 8:7-8, 12-15. He also testified that he met with Stafford on the day the notice of appeal was due and that she informed him that she would file it "before midnight." Tr. 8:17-25.

The Government called three witnesses: Cecutti, Stafford, and Whiteside's former mitigation specialist Ericka Adams. Each disputed Whiteside's version of events. Cecutti testified that he met with Whiteside twice during the two-week period following his

2

sentencing—once by himself and once with Adams. Tr. 75:18-25. Cecutti conceded that Whiteside initially wanted to appeal. Tr. 26:15-22; 59:4-5. But Cecutti explained that he discouraged Whiteside from taking an appeal because of the danger that the Government would cross-appeal the Court's finding that Whiteside committed manslaughter rather than murder as his crime of violence, thus exposing him to a longer sentence. Tr. 31:12-24. Cecutti also expressed his concern that, on remand from a successful appeal, the Court may impose a longer sentence based on hundreds of e-mails from Whiteside that the Government produced the day before the sentencing hearing. These e-mails reflected a "complete disrespect for human life," and the Government only cited a "limited" number during sentencing. Tr. 49:6-7; 51:23-24. Cecutti was concerned that, before a potential resentencing, the Government "would have been able to locate many others that were equally or perhaps more damaging." Tr. 52:2-4.

Cecutti testified that, by the end of his second meeting with Whiteside, he was "strongly leaning towards not going forward with an appeal." Tr. 34:10-17. Adams, who also attended that meeting, corroborated this testimony, explaining that Whiteside was "leaning towards not appealing." Tr. 88:17-89:6. Both Cecutti and Adams denied that Whiteside ever directed Cecutti to file a notice of appeal. Tr. 34:13-17; 89:7-16.

Stafford testified that she met with Whiteside on the day the notice of appeal was due. She was prepared to handle the filing "in case [Whiteside] wanted – or had changed his mind and wanted to file a notice of appeal." Tr. 106:9-11. But Stafford also discouraged Whiteside from appealing. Her principal concern was the e-mails, and she explained to Whiteside that she had recently been involved in a resentencing in which the judge resentenced the defendant to a harsher sentence "strictly for lack of remorse by the defendant." Tr. 107:16-19. She testified that as she left, she asked Whiteside, "do you want me to file this thing or should I go home,"

3

and he responded "I guess I'll have to trust you all." Tr. 107:22-25. Stafford agreed and said that he should "leave it alone," and Whiteside responded "okay." Tr. 107:25-108:3. She also testified as follows:

> Q. Was there ever any doubt in your mind as to the direction for Mr. Whiteside not to file the notice of appeal?
> A. None.
> Q. During that meeting did you ever hear Mr. Whiteside say that he "absolutely wanted to file an appeal"?
> A. No.
> Q. During that meeting did you ever hear Mr. Whiteside say that he "absolutely wanted to file an appeal"?
> A. No.

Tr. 108:4-10.

The issue is essentially one of credibility. The Court finds that Cecutti, Stafford, and Adams were conscientious, dedicated, and fully involved in providing high quality advocacy on behalf of Whiteside. They were highly credible. On the other hand, Whiteside was not credible. Against a long record of manipulation and deceit, it is clear that he created his story. Having heard the witnesses and considered the other evidence, the Court finds that Whiteside did not instruct his attorneys to file a notice of appeal. Thus, his appellate rights may not be reinstated on this basis.

In his post-hearing submission, Whiteside also argues that his attorneys rendered ineffective assistance of counsel because they (1) provided unreasonable advice on whether he should pursue an appeal and (2) failed to consult with him again about filing a notice of appeal following the issuance of an amended judgment months later. Each argument is rejected.

First, Cecutti and Stafford did not provide unreasonable advice on whether to appeal. Although the Court certainly believes that it made the correct "crime of violence" determination, it cannot say that Cecutti's fear of reversal on a potential cross-appeal was unreasonable. Nor

can it say that Cecutti and Stafford were unreasonable in advising Whiteside that the Court may impose a longer sentence based on any of the e-mails produced the day before sentencing but not cited by the Government in its original sentencing submission. Such e-mails could reasonably be considered "objective information in the record justifying the increased sentence." *See United States v. Weingarten*, 713 F.3d 704, 713 (2d Cir. 2013).

Cecutti and Stafford were also justified in believing that none of Whiteside's five proposed appellate issues had merit. His sentence of 115 months was an upward variance of only 18 months above the top of the guidelines range of 75 to 97 months, which does not "shock the conscience." *See United States v. Singh*, 877 F.3d 107, 116 (2d Cir. 2017) (vacating sentence "almost three times the high end of the Guidelines range"). Although Whiteside claimed that the e-mails were taken out of context, Cecutti reasonably feared the Government highlighting even more of them for either the Second Circuit or the Court. There was also no basis for Whiteside receiving a third point for acceptance of responsibility, as the Government did not file a motion requesting it, and Whiteside's delay in pleading guilty until the eve of trial suggests that this decision was not made in bad faith. *See United States v. Almontes*, 267 Fed. App'x 99, 100-01 (2d Cir. 2008). A defendant does not have a constitutional right to have a relative speak at his sentencing, and in any event the testimony would have been cumulative, as the PSR already included details of Whiteside's experience growing up, which the Court fully considered. Further, the comments about Whiteside being a pimp in a very exploitive, violent, and nasty business were justified because they were true, and in fact they were necessary because the Court was compelled to explain its above-guidelines sentence.

Second, Whiteside argues that Cecutti and Stafford should have discussed an appeal with him again when an amended judgment was entered two months after the initial deadline to file a

notice of appeal. That amended judgment, however, merely corrected a clerical mistake in spelling Whiteside's name. *See* Dkt. 103-04. As such, it did not restart the clock for Whiteside to file a notice of appeal. *See Farkas v. Rumore*, 101 F.3d 20, 22 (2d Cir. 1996) ("Where a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment, the time for appeal runs from the first judgment."). Contrary to Whiteside's suggestion, the Supreme Court's recent decision in *Manrique v. United States* is inapposite, as it addresses only the unrelated question of "whether a single notice of appeal, filed between the initial judgment and the amended judgment, is sufficient to invoke appellate review of the later-determined restitution amount." *See* 137 S. Ct. 1266, 1270 (2017).

Thus, Whiteside's attorneys' representation did not fall "below an objective standard of reasonableness" and did not constitute ineffective assistance of counsel. *See Strickland*, 466 U.S. at 688. Accordingly, Whiteside's motion to reinstate his appellate rights is **DENIED**.

Dated: New York, New York
February 20, 2018

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge